**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

ROBERT BOWEN,

      Plaintiff,

   v.

UNITED STATES OF AMERICA,

      Defendant.

CIVIL ACTION NO.: 6:19-cv-9

## O R D E R

This action arises from the federal government's denial of two attempts by Plaintiff Robert Bowen to obtain firearm suppressors. (Doc. 11.) Presently before the Court is Defendant United States' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (Doc. 14.) Plaintiff filed this suit under 18 U.S.C. § 925A and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et. seq.*, alleging that the United States erroneously prohibited him from purchasing two firearm suppressors. (Doc. 11.) The United States filed the at-issue Motion to Dismiss, arguing that sovereign immunity bars Plaintiff's claims, that the Amended Complaint fails to state a viable APA claim, and that this action is moot. (Doc. 14.) For the reasons set forth below, the Court **GRANTS** the United States' Motion to Dismiss the Amended Complaint. (Id.)

---

[1] Under federal law, "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case." Lowery v. Ala. Power. Co., 483 F.3d 1184, 1219 (11th Cir. 2007). An amended complaint moots "the motion to dismiss the original complaint because the motion seeks to dismiss a pleading that has been superseded." Wimberly v. Broome, No. 6:15-cv-23, 2016 WL 3264346, at *1 (S.D. Ga. Mar. 29, 2016) (collecting cases). Because Plaintiff filed an Amended Complaint which superseded his original Complaint, the Court **DENIES as moot** Defendant's Motion to Dismiss the original Complaint, (doc. 9).

## BACKGROUND

### I.      Statutory and Regulatory Background

The Gun Control Act of 1968 ("GCA") prohibits certain categories of people from shipping, transporting, possessing, or receiving firearms.  See 18 U.S.C. § 922.  In 1993, Congress amended the GCA through the Brady Handgun Violence Prevention Act ("Brady Act"), Pub. L. 103–159, 107 Stat. 1536.  The Brady Act directed the United States Attorney General to establish a background check procedure for determining whether federal or state law prohibits a prospective firearm purchaser from receiving a firearm.  18 U.S.C. § 922(t)(1).  The Attorney General established the National Instant Criminal Background Check System ("NICS"), which is managed by the FBI's NICS Section.  28 C.F.R. § 25.3.  The Brady Act also generally prohibits any licensed firearms dealer (i.e., the holder of a Federal Firearms License ("FFL")) from transferring a firearm to a prospective purchaser without first contacting NICS to perform a background check.  See 18 U.S.C. § 922(t)(1); 28 C.F.R. § 25.1; but see 18 U.S.C. § 922(t)(3) (identifying exempt transfers).

For most traditional firearm transfers, the FFL dealer initiates a NICS background check on the prospective purchaser.  18 U.S.C. § 922(t)(1)(A); 28 C.F.R. § 25.6(a).  NICS then searches various databases for any records showing that the prospective purchaser is prohibited from acquiring a firearm and issues a response indicating whether the transaction may "proceed," is "delayed," or is "denied."[2]  28 C.F.R. § 25.6(c)(1)(iv).  However, the transfer of certain types of firearms is subject to the National Firearms Act ("NFA"), which establishes "a separate regulatory structure for a narrow class of specialized weapons, termed 'firearms,' that includes short-barreled shotguns and other inherently dangerous destructive devices, such as grenades, bombs, explosives,

---

[2]  A "delayed" response occurs if "the NICS search finds a record that requires more research to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law."  28 C.F.R. § 25.6(c)(1)(iv)(B).

and rockets." United States v. McGill, 618 F.3d 1273, 1278 (11th Cir. 2010) (citing 26 U.S.C. §§ 5841, 5845(a)–(f)).   To receive or purchase a firearm or other item (including a firearm suppressor)[3] that is subject to the NFA (hereinafter "NFA firearm"), the prospective purchaser must receive approval from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and pay a tax.  See 26 U.S.C. § 5812(a).  Specifically, the FFL dealer must submit an ATF Form 4 to register the NFA firearm to the purchaser and pay a $200 tax.  26 U.S.C. §§ 5811(a), 5812(a); 27 C.F.R. § 479.84(a).  If the transfer of the NFA firearm to the transferee "would place the transferee in violation of law," the ATF must deny the transfer.  26 U.S.C. § 5812(a); 27 C.F.R. § 479.86.  To determine if the transfer would place the purchaser in violation of the law, the ATF must consult NICS.  27 C.F.R. § 479.86.  Like with traditional firearm transfers, NICS issues a proceed, denied, or delayed determination.  28 C.F.R. § 25.6(c)(1)(iv).

## II.    Factual Background

In September 2017, Plaintiff attempted to purchase two firearm suppressors.  (Doc. 11, p. 2.)  Plaintiff completed an ATF Form 4 and paid the $200 tax for each suppressor.  (Id.)  On November 26, 2018, after consulting with NICS, the ATF declined to approve the transfers because NICS returned a delayed (or "open") status determination.  (Id. at pp. 2–3; doc. 14-1, p. 3.)  According to Jessica Hayes, the Section Chief at the Industry Processing Branch of the ATF's NFA Division, the transfer taxes were refunded.[4]  (Doc. 14-1, p. 3.)  Neither party states why the background search returned a delayed designation.  However, NICS records indicate that in 2008

---

[3] A firearm suppressor (or "silencer") is classified as a "firearm" for purposes of the NFA.  26 U.S.C. § 5845(a); 27 C.F.R. § 479.11.  Indeed, Plaintiff concedes that the NFA governs the transfer of firearm suppressors.  (Doc. 11, p. 2.)

[4] As Section Chief, Hayes "oversee[s] the Industry Processing Branch, which administers the [NFA] and the regulations pursuant to the [NFA], maintains the National Firearms Registration and Transfer Record, the central registry of all NFA firearms in the United States, and processes applications for NFA firearms, including the ATF Form 4."  (Doc. 14-1, p. 2.)

a separate request to transfer a firearm to Plaintiff was denied because Plaintiff's Georgia criminal history records revealed a "Disqualification for Firearms flag."  (Doc. 14-2, p. 3.)

The United States concedes that Plaintiff is not presently prohibited from receiving or possessing a firearm.  (Id.)  Indeed, according to a Declaration by Charles Mays, a legal administrative specialist and custodian of records with NICS, a NICS search conducted on May 8, 2019, (after Plaintiff initiated this suit) showed that—at the time of the search—Plaintiff was not prohibited from receiving or possessing a firearm and that the Georgia disqualification flag had been removed.  (Doc. 14-2, pp. 3–4.)  Furthermore, according to Hayes, the ATF received four Form 4 applications in June and July 2019 requesting approval to transfer NFA firearms to Plaintiff.  (Doc. 18-1, p. 1.)  Two of these applications "sought to transfer two [suppressors] with serial numbers matching those contained in [Plaintiff's] two applications [that the] ATF disapproved on November 26, 2018."  (Id.)  On September 30, 2019, the ATF approved all four of these applications, including the two applications seeking approval to transfer the at-issue firearm suppressors to Plaintiff.  (Id.)  Thus, it appears from Hayes' Declaration that Plaintiff has received ATF approval to receive and possess the at-issue firearm suppressors since September 30, 2019.  (See id.)

## III.    Procedural History

Plaintiff initially filed this suit on February 14, 2019.  (Doc. 1.)  The United States filed a Motion to Dismiss the original Complaint, (doc. 9), and Plaintiff subsequently filed an Amended Complaint, requesting judicial review of the ATF's allegedly wrongful denial of the transfers under 18 U.S.C. § 925A(2) and the APA, (doc. 11).  In the Amended Complaint, Plaintiff seeks an order "requiring Defendant to approve the transfers," an order declaring that "Defendant acted contrary to law in denying the transfers," and an award of his costs and reasonable attorney's fees.  (Id. at p. 3.)

The United States filed the at-issue Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that (1) the United States government has not waived its sovereign immunity as to Plaintiff's 18 U.S.C. § 925A(2) claim, (doc. 14, pp. 8–11); (2) Plaintiff failed to specify the nature of his APA claim or "point to another statute or regulation he believes [the] ATF violated," (id. at pp. 11–13); (3) Plaintiff failed to sufficiently allege that a final agency action occurred for purposes of the APA, (id. at pp. 13–14); (4) the ATF's decision to reject the at-issue transfers is not amenable to APA review because the decision was committed to agency discretion, (id. at pp. 14–16); and (5) Plaintiff's claims are moot because Plaintiff either was or is able to obtain the at-issue firearm suppressors, (id. at pp. 16–19). Plaintiff filed a Response, (doc. 15), and the United States filed a Reply, (doc. 17). The United States also attached several Declarations to its pleadings, including a Declaration from Charles May, (doc. 14-2), and two Declarations from Jessica Hayes, (docs. 14-1, 18-1).

## STANDARD OF REVIEW

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction or under Rule 12(b)(6) when the complaint does not state a facially plausible claim for relief. Here, Defendant argues that dismissal is appropriate on both grounds. When a court has pending before it a motion to dismiss on both of these grounds, the generally preferable approach is to decide the jurisdictional issue first and then, if jurisdiction is found, to decide whether a claim has been stated. Jones v. State, 725 F.2d 622, 623 (11th Cir. 1984).

Motions pursuant to Rule 12(b)(1) take one of two forms: a "facial attack" on subject matter jurisdiction based on the complaint's allegations taken as true or a "factual attack" based on evidentiary matters outside of the pleadings. McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007). In the "factual attack" context, the Court considers whether subject matter jurisdiction tangibly exists in fact, irrespective of the complaint's

allegations.  Id.  When faced with such a challenge to subject matter jurisdiction, a plaintiff has the burden to prove facts which show jurisdiction exists over its claims.  OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002).  Here, the United States raises both a factual and facial attack on subject matter jurisdiction.  (Doc. 14, p. 7.)

To resolve a factual attack, a court "may consider extrinsic evidence such as testimony and affidavits," rather than being constrained to the allegations in the complaint.  Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Courts are "free to weigh the facts," subject to clearly erroneous review, without viewing them in the light most favorable to the plaintiffs. Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009).  In deciding a fact-based motion to dismiss for lack of subject matter jurisdiction, a court may dismiss the complaint on any one of three bases: (1) the complaint alone; (2) "the complaint supplemented by undisputed facts evidenced in the record;" or (3) "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  McElmurray, 501 F.3d at 1251 (quoting Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)).  While plaintiffs are entitled to a reasonable opportunity for discovery and a hearing on this issue, courts are empowered to decide factual motions on affidavits alone, where appropriate, so long as they identify and explain their factual determinations.  Williamson, 645 F.2d at 413–14.  Furthermore, courts are to "use their judicial experience and common sense in determining whether" a case meets federal jurisdictional requirements.  Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1062 (11th Cir. 2010).  In contrast, "[i]f the challenge is facial, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised."  McElmurray, 501 F.3d at 1251 (internal quotations omitted).  Thus, "[a] 'facial attack' on the complaint require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion."  Id.

(internal quotations omitted).  Under a motion to dismiss brought pursuant to Rule 12(b)(6), a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).  A complaint must state a facially plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" does not suffice.  Ashcroft, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

## DISCUSSION

Article III of the United States Constitution limits the power of federal courts to the adjudication of actual "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1; see also Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014).  "The case-or-controversy restriction imposes what are generally referred to as 'justiciability' limitations."  Strickland, 772 F.3d at 882.  "Three strands of justiciability doctrine—standing, ripeness, and mootness— . . . go to the heart of the Article III case or controversy requirement."  Harrell v. Fla. Bar, 608 F.3d 1241, 1247 (11th Cir. 2010) (internal quotation marks and alterations omitted).  Regarding mootness, the United States Supreme Court has made clear that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992).  "An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."  Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2019) (internal quotation marks omitted).  Questions of justiciability

are not answered "simply by looking to the state of affairs at the time the suit was filed.  Rather, the Supreme Court has made clear that the controversy 'must be extant at all stages of review, not merely at the time the complaint is filed.'"  Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189–90 (11th Cir. 2011) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).

The United States argues that Plaintiff's claims are moot because "the [s]tate of Georgia removed its disqualification flag and NICS now indicates [that Plaintiff] is not . . . prohibited" from receiving a firearm.  (Doc. 14, p. 17.)  Furthermore, the ATF approved new Form 4 applications to transfer the at-issue suppressors to Plaintiff.  (Doc. 18, p. 1.)  Thus, the United States argues, no live dispute remains as Plaintiff may obtain or has obtained the at-issue suppressors.  (See doc. 14, p. 17; doc. 18, p. 1.)  Plaintiff argues that a live dispute remains because the United States "has not changed its position on the transfers in question."  (Doc. 15, p. 5.)  In other words, Plaintiff argues that a live controversy remains because the United States has not retroactively approved the previously denied transfers.  (See id. at pp. 5–6.)

The Court finds that Plaintiff's claims are moot.  The United States has provided Plaintiff with the relief he seeks: approval of the transfer of the at-issue suppressors, (doc. 18-1, p. 1), and a declaration stating that "the Georgia Disqualification for Firearms flag has been removed, and it has been determined that Mr. Bowen is not currently prohibited from receiving or possessing a firearm under federal or state law," (doc. 14-2, p. 4).  The United States also provided a declaration stating that "NICS has indicated there is no potentially prohibitive information [about Plaintiff] in its system."  (Doc. 14-1, p. 3.)  Furthermore, the ATF approved the transfer of the at-issue firearm suppressors to Plaintiff.  (Doc. 18-1, p. 1.)  Thus, the Court finds that no live case or controversy exists between the parties, and Plaintiff's claims, therefore, are moot.[5]  See Roach v. United States,

---

[5] Plaintiff's claim for attorney's fees is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."  Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990).

1:17-CV-04562-ELR, 2019 WL 2084409, at *4 (N.D. Ga. Feb. 8, 2019) ("[A]s to the first transfer, NTN 35858DL, the Court is presented with documentation showing that this transfer is now approved.  As such, Plaintiff's requested relief regarding the first transfer is moot."); Myrick v. United States Dep't of Veteran Affs., No. 2:16cv555-MHT-WC, 2017 WL 1074362, at *7 (M.D. Ala. Mar. 1, 2017) ("Because the affidavits provided in this case indicate that Plaintiff is no longer listed in the NICS database or prohibited from exercising his Second Amendment rights in any way, there is no longer a live case or controversy between the parties, and the court cannot provide the relief that Plaintiff requests."), *report and recommendation adopted by* No. 2:16cv555-MHT, 2017 WL 1086181 (M.D. Ala. Mar. 20, 2017); Halverson v. United States, 19-cv-477-jdp, 2020 WL 3058152, at *3 (W.D. Wisc. June 9, 2020) ("The government has approved the shotgun transfer and told Halverson that his past criminal record will not bar him from future firearm ownership, so there is no longer a case or controversy between the parties."); Perron, 2018 WL 835713, at *2 ("Defendant represents that after reviewing the information in the NICS database, it has been determined that Plaintiff is able to purchase a firearm, and there is no information in the NICS databases that would prevent him from doing so.  Defendant sent Plaintiff a letter informing him of this fact.  Therefore, there is no controversy and Plaintiff's claim is moot."); Wilson v.

---

Therefore, Plaintiff's request for attorney's fees does not save his moot claims.  Furthermore, awards of attorney's fees are only available to "prevailing part[ies]."  18 U.S.C. § 925A.  The government's "voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur*" to render Plaintiff a "prevailing party."  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001).  Thus, the Court finds that Plaintiff is not entitled to attorney's fees.  See Perron v. Fed. Bureau of Investigation, No. C17-215 RAJ, 2018 WL 835713, at *3 (W.D. Wash. Feb. 13, 2018) ("[T]he information at issue has been corrected and Plaintiff may now purchase a firearm.  However, Plaintiff is not a prevailing party where relief is obtained through '[a] defendant's voluntary change in conduct.'") (quoting Buckhannon Bd. & Care Home, Inc., 532 U.S. at 605); McKay v. New York, No. 16-CV-6834-FPG, 2018 WL 1046792, at *4 n.5 (W.D.N.Y. Feb. 26, 2018) ("[Section 925A] instructs that fees are limited to 'prevailing part[ies].'  But 'a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur*' to make the plaintiff a 'prevailing party.'  Thus, even if Plaintiff had a claim under the statute—which the Court has not determined—she would not be a 'prevailing party' eligible to receive attorney's fees.") (citations omitted).

United States, No. 1:14-CV-3023-TOR, 2014 WL 6997770, at *2 (E.D. Wash. Dec. 10, 2014) ("[W]hat relief the Court could order in regard to that attempted transaction has already been provided.  At the time Plaintiff was denied his purchase, the Court could do nothing more than to order the NICS to correct the information in the database and to order that the transfer be approved.  This has already been accomplished through the NICS appeal process. . . .  [A]ny claim that Plaintiff had regarding the denial of his February 19, 2014, firearm purchase is now moot and is dismissed."); Umbert v. United States, No. 18-cv-1336 (TSC), 2019 WL 4305576, at *5 (D.D.C. Sept. 11, 2019) ("Because Chodosh, Bickel, and Stewart can purchase a firearm and can personally apply for a UPIN, there is no further relief that the court can grant them at this time."). Accordingly, the Court **GRANTS** the United States' Motion to Dismiss the Amended Complaint.[6] (Doc. 14.)

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the United States' Motion to Dismiss Plaintiff's Amended Complaint.  (Doc. 14.)  The Court also **DENIES as moot** the United States' Motion to Dismiss the original Complaint.  (Doc. 9.)  The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

SO ORDERED, this 5th day of November, 2021.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[6] Because Plaintiff's claims are moot, the Court declines to address the United States' other arguments for dismissal.